Lenhoff, J.
The Plaintiffs, an employee’s wife and three minor children, allege in their complaint that negligence of the Defendant employer caused severe emotional distress, loss of consortium and services to said wife and loss of services to said children, to their damage.
*310 The Defendant employer denied said allegations and it asserts negligence on the part of said employee.
The facts disclose that the concerned employee brought gunstocks to machine operators on a flatbed truck. Said truck was about two and one-half feet off the ground and was carrying about two hundred fifty gunstocks weighing about one thousand pounds.
While in the process of pulling the flatbed truck with the aforestated load, it stopped, jerking the employee thereby causing a pain down his back resulting in subsequent disability. The stopping was the result of the wheels locking. After the stopping incident, the truck was removed by two individuals because of the trouble with the wheels.
In the area where the stopping took place, there was sawdust. It was not unusual for flatbed trucks used for gunstock moving purposes to jam up because of this condition. Also, such condition had been the subject of prior complaints to the employer’s foreman. The employer had some new trucks with metal framework instead of wood. Further, wheels on trucks had previously jammed because they were not maintained, greased or checked.
Evidence was produced questioning the accuracy of the number of involved gunstocks carried by the flatbed truck, the condition of the floor, the weight of the gunstocks, and of other facts above set forth.
The Trial Court found: “The cause of the stopping or jerking was either a wheel that malfunctioned or an obstruction on the floor.” In addition, it found that “the work area is covered with sawdust” and “maintenance and cleaning on the.. .trucks is infrequent. ’ ’ Also, the Trial Court found that by reason of the trucks stopping or jerking, the employee sustained a back injury with consequent pain, disability, surgery and curtailment of his activities, all to the damage of the Plaintiff wife and one Plaintiff child .Whereupon, the said Court caused the following judgments to be entered:
On Count I, judgment for Plaintiff wife for $10,000.00.
On Count II, judgment for Plaintiff child, Robert St. Pierre, for $2,500.00.
On Counts III and IV, judgment for the Defendant.
At the trial’s close, before final arguments, the Defendant employer filed five (5) Requests for Rulings of Law[2]. The first request was allowed and requests numbered two (2) through five (5) were denied.
The Defendant claiming to be aggrieved by the Trial Court’s denial of requests 2, 3, 4, and 5, this matter has been reported to the Appellate Division for determination.
The claims of the Plaintiffs for loss of consortium and society of their employee husband and father against his employer are predicated and based on the alleged negligence of said employer. Ferriter v. Danniel O’Connell’s Sons, Inc., 381 Mass. 507 (1980).
In Beaver v. Costin, 325 Mass. 624, 626 (1967), we find an excellent definition of “negligence”.
Negligence... .in its ordinary sense, is the failure of a responsible person, either by omission or by action, to exercise that degree of care, *311 vigilance and forethought which, in the discharge of the duty then resting on him, the person of ordinary caution and prudence ought to exercise under the particular circumstances.
Said “negligence” must be affirmatively shown and proved by the Plaintiffs. The following quote repeated in Alhom v. Wareham, 371 Mass. 621, 626 (1976), clearly explains the burden applicable to the facts here presented:
The nature of the burden thus placed on the plaintiffs was most comprehensively set forth in Bigwood v. Boston & N. St. Ry., 209 Mass. 345, 348 (1911): By bringing their actions, the plaintiffs assumed the obligation to show that the negligence of the defendant caused their injury. This was an affirmative burden and could not be left to surmise, conjecture or imagination. There must be something amounting to proof, either by direct evidence or rational inference of probabilities from established facts. While the plaintiff is not bound to exclude every other possibility of cause for his injury except that of the negligence of the defendant, he is required to show by evidence a greater likelihood that it came from an act of negligence for which the defendant is responsible than from a cause for which the defendant is not liable. If on all the evidence, it is just as reasonable to suppose that the cause is one for which no liability would attach to the defendant as one for which the defendant is liable, then a plaintiff fails to make out his case.
Because a plaintiff is under no obligation to describe the details of a defendant’s negligence it is enough that evidence be presented from which negligence might properly be inferred. Lameiras v. Corey, Mass App. Ct. Adv. Sh. (1981) 2018, 2019; Alholm v. Wareham, supra, at page 627. Such inference must be reasonable, considering all the evidence, from whatever source derived, together with any combination of circumstances. Mullins v. Pine Manor College 389 Mass. 47, 56 (1983); International Fidelity Ins. Co. v. Wilson, 387 Mass. 841 (1983); Miles v. Edward O. Tabor, M.D., Inc., 387 Mass. 783, 786 (1982). And, it must be based on “probabilities rather than possibilities” and not the result of “mere speculation and conjecture”. See Mullins v. Pine Manor Collete, supra, also at page 56; Carey v. General Motors Corp., 377 Mass. 736, 740 (1979); Marbardy v. Campo, 344 Mass. 459, 462 (1962); Knox v. Lamoureaux, 338 Mass. 167, 169 (1958); Hellie v. Goldstein, 338 Mass. 22, 24 (1958); Ghoti Estates, Inc. v. Freda’s Capri Restaurant, Inc., 332 Mass. 17 (1954). Further, the law does not require the plaintiff to point out the exact way an accident occurred; and, the burden of proof can be sustained by proving “there was a greater likelihtood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause.” See McLaughlin v. Bernstein, 356 Mass. 219, 226 (1969).
Having set forth the foregoing backdrop of applicable law, we now direct our attention to the Defendant’s grievance contending the Trial Court erred in denying its requests for rulings of law. In doing so, Defendant’s Request No. 2 that the complaint and all the evidence compels a finding for the Defendant is considered. This prompts our review of said evidence to enable a determination whether same is sufficient to warrant the Trial Court’s ultimate conclusions or findings.
At the outset, it is realized and recognized that “the evaluation of .. .circumstantial evidence is frequently, and unavoidably, a difficult and hair splitting task. Oliveri v. Massachusetts Bay Transportation Authority, 363 Mass. 165, 168 (1973). Notwithstanding the difficulty encountered, examination reveals that immediately after ‘ ‘the stopping or jerking’ ’ the flatbed truck was removed *312 by two men because of wheel trouble; that there was sawdust in the area which on past occasion had caused flatbed truck wheels to jam; and, past jamming of flatbed truck wheels had jammed because they were not properly maintained, greased and checked. Such evidence, if standing alone, could warrant and justify that part of the Trial Court’s ultimate conclusion or finding, to wit, “the cause of the stopping was.. .a wheel that malfunctioned”.
We particularly notice, however, that the Trial Court’s ultimate conclusions or findings contain and include therein a second cause. The entire ultimate conclusions or findings read as follows:
“The cause of the stopping or jerking was either a wheel that malfunctioned or an obstruction on the floor.”
Close analysis discloses that the Trial Court, based on the evidence, stated another reason for the “stopping or jerking”. Thusly, the Trial Court has found two causes responsible for the resultant injury to the employee spouse and father. This double finding would be of no moment “if negligence of the defendant was made out to both equally probable causes”. See McLaughlin v. Bernstein, surpra, at page 226. Has negligence been made out to the second stated probable cause of there being “an obstruction on the floor?” The evidence does show that there was sawdust in the involved area. Whether said sawdust could rightfully be considered an “obstruction’ ’ can not be ascertained. Evidence of volume or consistency of the mentioned substance plus any other helpful description is totally absent. Also, we find no evidence to enable the exclusion of some other substance or object that might or could be involved. There also is a lack of evidence present as to whether the defendant knew or should have known of such obstruction to place responsibility on it, or, if one other than the defendant was responsible therefor. Summing up the Trial Court’s ultimate conclusion or finding of “ an obstruction on the floor’ ’ is in the realm of surmise, speculation or conjecture. Hence, it fails to establish liability on the part of the defendant.
In Smith v. First National Bank in Westfield, 99 Mass. 605, 612 (1968), the Court said:
When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof. A verdict in favor of the party bound to maintain one of those propositions against the other is necessarily wrong.
See Commonwealth v. Shea, 324 Mass. 710, 713, (1949).
Also, in Alholm v. Wareham, supra, at page 626, the following language appears: “Matters that are left so doubtful that there is no preponderance either way are not proved in a legal sense.”
In view of the Trial Court’s aforestated conclusions and findings, one which places liability on the Defendant and the other which we hold fails to do so, we find that this tribunal harbors doubt for neither conclusion or finding preponderates. In such a situation, the Plaintiffs fail to sustain their burden. Consequently, the judgment rendered by the Trial Court on Counts I and II of the Plaintiffs’ complaint is in error.
Inasmuch as Defendant’s Request No. 2 has the same effect as a motion for a directed verdict in a jury trial, its thrust is that the complaint and all the evidence compels a Defendant’s finding. Though the contradictory conclusions or findings of the Trial Court indicate its evaluation of the evidence appears to compel a finding for the Defendant, all the reported evidence does not, in the circumstances of this case, demand such disposition. The Trial Court’s judgment flowing out of and from its conclusions or findings is erroneous, not its denial of *313 defendant’s Request No 2.
The discussion herinbefore made results in our conclusion that Defendant’s Requests numbered 3, 4, and 5 merit no further attention.
Although the Defendant’s Requests for rulings of law are not considered to be in error, our review uncovered or discovered the Trial Court’s aforestated error which cannot be ignored. We, therefore, make the final determination that had the Trial Court applied the correct law consistent with this opinion, error may have been avoided with the rendering of a proper decision. Whether the decision would be favorable to the Plaintiffs with a different conclusion or finding, or for the defendant, will be for the Trial Court to decide.
In consequence of the foregoing error having been found, the Trial Court’s judgment for the Plaintiff on Counts I and II of the complaint, be and is hereby vacated; and, the case is remanded to the Springfield Division of the District Court Department for a new trial.

 1. On the complaint and all the evidence, a finding is warranted for the defendant. 2. On the complaint and all the evidence, a finding is compelled for the defendant. 3. The mere fact that a truck is overloaded does not in itself constitute negligence. 4. There can be no recovery by the plaintiffs since, even if the court finds negligence, there is no evidence that said negligence was the proximate cause of the injuries suffered by the plaintiffs’ spouse and father. 5. There must be a finding for the.defendant since there is no evidence as to what specifically caused the truck to stop. Further, there is no evidence that the truck stopped because it was overloaded, if, in fact, it was overloaded.